UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
TYLER PIZARRO,

              Plaintiff,                  **MEMORANDUM & ORDER**

   - against –                   14-CV-507(KAM)(VVP)

THE CITY OF NEW YORK, DETECTIVE JOSEPH
BEY, DETECTIVE STEVEN LUNDY, POLICE
OFFICERS JOHN DOE 1-5, CAPTAIN JOHN DOE
1-3, and CAPTAIN RICHARD ROE

              *Defendants*.
----------------------------------------X

**MATSUMOTO**, United States District Judge:

      Plaintiff Tyler Pizarro brought this lawsuit pursuant

to 42 U.S.C. § 1983 ("§ 1983") against the City of New York (the

"City"), Detective Joseph Bey, Detective Steven Lundy, Police

Officers John Doe 1-5, Captain John Doe 1-3, and Captain Richard

Roe (collectively, the "defendants") alleging violations of his

constitutional rights in connection with an October 20, 2008

shooting and plaintiff's subsequent arrest and prosecution.

Plaintiff alleges claims of malicious prosecution; violations of

his right to a fair trial, right against self-incrimination and

right to counsel; and supervisory and municipal liability

pursuant to 42 U.S.C. § 1983.

      Presently before the court is the City's motion to

dismiss the Complaint for failure to state a claim pursuant to

Federal Rule of Civil Procedure 12(b)(6).  For the reasons set

forth below, the City's motion[1] is granted in part and denied in part.[2]

**BACKGROUND**

The following facts are taken from plaintiff's Complaint and are assumed to be true for the purposes of the court's evaluation of the motion to dismiss. (Compl., ECF No. 1, filed 1/23/14). On October 20, 2008 at approximately 9:19 p.m., plaintiff, who was sixteen years old at the time, was walking to meet his friends when he heard gunshots from the vicinity of Himrod Street between Cypress Street and Seneca Avenue in Queens, New York. (Compl. ¶ 20.) Upon hearing the shots, plaintiff ran from the scene of the shooting to his house where his mother and brother also resided. (*Id.*) Plaintiff alleges that he neither participated in nor witnessed the shooting. (*Id.* ¶ 21.) Two victims were shot and injured as a result of this shooting: a five year-old girl who was shot in the back and Francis Dejesus, who was shot in the foot. (*Id.* ¶ 22.) Plaintiff alleges that Mr. Dejesus told investigators that

---

[1] Plaintiff, via his counsel, Mr. Kevin P. O'Donnell, failed to oppose the City's motion to dismiss. (*See generally* Docket No. 14-cv-507.) The court deemed the motion fully briefed on March 24, 2015. (Order, dated 3/24/15.)

[2] The City's memorandum notes that defendants Detective Bey and Detective Lundy have not been served but submits that the arguments apply with equal force to them. (*See* Def. City of New York's Mem. of Law in Supp. of Mot. to Dismiss Pl.'s Compl. ("Def. Mem.") at 1 n.1, ECF No. 19, filed 12/10/14.) The court considers the City's motion to dismiss as including all claims against all defendants

plaintiff was not one of the shooters and did not possess a gun.
(*Id.* ¶ 26.)

A police investigation revealed that the shooting was a shootout involving individuals from rival street gangs, the Patrias and the Bloods. (*Id.* ¶ 23.) Within 24 hours of the shooting, several purported members of the Patrias gang were arrested and weapons were recovered. (*Id.* ¶ 24.) The police also deemed Juan Martinez, also known as "Iceberg," to be a person of interest in connection with the shooting as an alleged member of the Bloods gang. (*Id.* ¶ 25.)

Plaintiff received a call from Mr. Martinez the next day asking plaintiff to go to Mr. Martinez's apartment to retrieve some clothing. (*Id.* ¶ 27.) Plaintiff agreed to the request. (*Id.*) While he was at Mr. Martinez's apartment, plaintiff was stopped by members of the New York Police Department ("NYPD"), who had the apartment building under surveillance. (*Id.*)

The NYPD brought plaintiff to the 104th Precinct for questioning. (*Id.* ¶ 28.) Plaintiff acknowledged that he was attempting to bring clothing to Mr. Martinez at a different location in Brooklyn, because the area around Mr. Martinez's apartment was "too hot." (*Id.*) Plaintiff adamantly denied any involvement in the shooting and answered all questions that were posed to him by the police officers. (*Id.*) Plaintiff's cell

phone was taken from him immediately upon his arrival at the precinct, and plaintiff observed the police officers as they examined his cell phone. (*Id.*) The Complaint alleges that plaintiff requested to call his mother on numerous occasions, and each request was denied. (*Id.*) After hours of questioning and upon submission of a written statement by plaintiff, he was released. (*Id.*) Plaintiff alleges that as he was leaving the precinct, Captain John Doe said something to the effect of "you better not be bullshitting me or else I'll be at your house tomorrow to pick you up." (*Id.*)

The NYPD apprehended Mr. Martinez on or about October 22, 2008, a day after plaintiff gave his first statement. (*Id.* ¶ 29.) Mr. Martinez provided a written statement to the police at the 104th precinct on October 23, 2008 at approximately 5:00 a.m. wherein he claimed that plaintiff was the shooter. (*Id.*)

Approximately one hour later, three NYPD detectives picked up plaintiff from his residence and brought him to the 104th Precinct for additional questioning. (*Id.* ¶ 30.) As the detectives brought plaintiff to the interrogation room of the 104th Precinct, the detectives led plaintiff past a holding cell. (*Id.* ¶ 31.) Detective Lundy allegedly instructed plaintiff to look into the holding cell where Mr. Martinez was sleeping. (*Id.*)

Plaintiff was in the interrogation room for approximately twenty minutes before Detective Lundy entered and proceeded to tell plaintiff that he lied to the detectives the day before and that the statement plaintiff gave was "complete bullshit." (*Id.* ¶ 32.) Detective Lundy then told plaintiff that Mr. Martinez had told the police officers that plaintiff shot the little girl. (*Id.*) The Complaint alleges that plaintiff continued to assert his innocence while Detective Lundy screamed at and threatened plaintiff, and called him a liar. (*Id.*)

After approximately fifteen minutes, Detective Lundy left the room and Detective Bey entered. (*Id.* ¶ 33.) Detective Bey reiterated Detective Lundy's statements, but in a less aggressive and less threatening manner. (*Id.*) After approximately fifteen minutes, Detective Bey left the room. (*Id.*) Detective Lundy then re-entered the interrogation room. (*Id.* ¶ 34.) The Complaint alleges that Detective Lundy continued to scream at plaintiff, called him a liar, told plaintiff that his statement was a lie, and that Mr. Martinez had identified plaintiff as the individual who shot the little girl. (*Id.*) Detective Lundy also allegedly told plaintiff to write a statement that he committed the shooting or "he would never see the light of day" if he did not have $300,000 to make bail. (*Id.*) Detective Lundy also told plaintiff that he was

going to jail whether or not he submitted a statement, but that he would be better off if he did so. (*Id.*) Plaintiff continued to maintain his innocence, and Detective Lundy left the room. (*Id.*) Detective Bey reentered the room and told Mr. Pizarro, in a less aggressive tone, that Mr. Pizarro was lying about the shooting and instructed him to write a statement. (*Id.* ¶ 35.)

Shortly thereafter, a pad and pen were thrown onto the table in front of Mr. Pizarro. (*Id.* ¶ 36.) At this point during the interrogation, Detectives Bey and Lundy and Police Officer John Doe #1 were in the room with Mr. Pizarro. (*Id.*) Detectives Bey and Lundy told Mr. Pizarro to write the statement. (*Id.*) Mr. Pizarro continued to maintain his innocence and refused to write a statement. (*Id.*) Detective Lundy and Police Officer John Doe #1 left the room, and Detective Bey remained with Mr. Pizarro and continued to attempt to persuade him to write the statement. (*Id.*)

Detective Lundy then entered the room with a piece of paper that he placed on the table and told Mr. Pizarro that the paper contained Iceberg's statement identifying Mr. Pizarro as the individual who shot the little girl. (*Id.* ¶ 37.) Mr. Pizarro looked at the statement and noticed the portion of the statement where Mr. Martinez identified Mr. Pizarro as the shooter of the young girl. (*Id.*) Mr. Pizarro felt scared after reading the statement but continued to assert his innocence.

(*Id.* ¶ 38.) Detective Lundy then left the room, taking the statement with him and leaving Detective Bey with Mr. Pizarro in the room. (*Id.*) Detective Bey again encouraged Mr. Pizarro to write a statement, telling Mr. Pizarro that he "would get less time" if he did so. (*Id.* ¶ 39.) Mr. Pizarro began to cry as he continued to maintain his innocence and asked to call his mother. (*Id.*) Detective Bey denied Mr. Pizarro's request to call his mother. (*Id.*)

Thereafter, Mr. Pizarro picked up the pen and asked Detective Bey what he wanted him to write. (*Id.* ¶ 40.) The Complaint alleges that Detective Bey dictated, word-for-word, what Mr. Pizarro should write, and Mr. Pizarro complied. (*Id.*) After Mr. Pizarro finished writing, Detective Bey then left the room, taking the statement with him. (*Id.*) Shortly thereafter, Detective Bey returned and handcuffed Mr. Pizarro to a pole attached to the wall. (*Id.*) After a short period of time, Detectives Lundy and Bey entered the room with a *Miranda* sheet and told Mr. Pizarro to note his initials on the line next to each of the six questions on the sheet and sign his name at the bottom. (*Id.*) Mr. Pizarro initialed the sheet. (*Id.*) The Complaint alleges that Mr. Pizarro was never advised of his *Miranda* rights. (*Id.*)

Detectives Lundy and Bey reported to Assistant District Attorney Michael Whitney that the confession Mr.

Pizarro provided on October 23, 2008 was voluntary and without any assistance from Detectives Bey and Lundy. (*Id.* ¶ 42.) Mr. Pizarro was formally arrested at approximately 8:00 a.m. on October 23, 2008. (*Id.* ¶ 44.) He was arraigned later that evening on charges of Assault in the First Degree, Criminal Possession of a Weapon in the Second Degree and related charges. (*Id.*) Mr. Pizarro was remanded at the arraignment. (*Id.*) On or about November 5, 2008, Mr. Pizarro was released from custody after his family posted bond. (*Id.* ¶ 45.)

On August 2, 2010, a pre-trial suppression hearing was conducted concerning the admissibility of Mr. Pizarro's statement. (*Id.* ¶ 47.) The Complaint alleges that Detectives Bey and Lundy falsely testified that Mr. Pizarro's statement was made entirely voluntarily, free of any duress or coercion. (*Id.* ¶ 47.) The trial commenced in Queens County Supreme Court, Part K11 on March 2, 2011, before the Honorable Joseph Zayas. (*Id.* ¶ 48.) Mr. Pizarro was found not guilty of all charges. (*Id.* ¶ 50.) The Complaint alleges that Detectives Bey and Lundy met with prosecutors before they testified to the Grand Jury, pre-trial hearings, and at trial and maintained their fabricated version of the circumstances surrounding Mr. Pizarro's confession. (*Id.* ¶ 51.)

## STANDARD OF REVIEW

### I.  Motion to Dismiss Pursuant to Rule 12(b)(6)

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Allen v. Norman*, 548 Fed. App'x 25, 26 (2d Cir. 2013). A complaint, however, must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint is insufficient to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

The City moves to dismiss the Complaint in its entirety. The court addresses plaintiff's claims for malicious prosecution; violations of his right to a fair trial, right

9

against self-incrimination, and right to counsel; and supervisory and municipal liability in turn.

## I. Malicious Prosecution[3]

To bring a § 1983 malicious prosecution claim, a plaintiff must allege the four elements of a malicious prosecution claim under New York law — "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions" – as well as a post-arraignment seizure. *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (internal citations and quotation marks omitted). Police officers can initiate a prosecution by "fil[ing] the charges" or "prepar[ing] an alleged false confession and forward[ing] it to prosecutors." *Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010)(internal quotations and

---

[3] Although plaintiff alleges defendants' "failure to investigate" the exculpatory evidence as a separate claim from malicious prosecution, under New York law "there is no such independent claim." *Campbell v. Giuliani*, No. 99-CV-2603, 2000 WL 194815, at *3 n.6 (E.D.N.Y. Feb. 16, 2000). "[A] plaintiff may not recover under broad general principles of negligence [for an inadequate police investigation], . . . but must proceed by way of the traditional remedies of false arrest and imprisonment and malicious prosecution." *Boose v. City of Rochester,* 421 N.Y.S.2d 740, 744 (N.Y. App. Div. 1979). Thus, the court considers the plaintiff's claims of failure to investigate pursuant to the rubric for malicious prosecution. *See Dukes v. City of New York,* 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (allegations of an officer's failure to interview witnesses and discover addition evidence addressed in the context of a malicious prosecution claim).

citation omitted).  Although the existence of probable cause to prosecute may provide a complete defense to a malicious prosecution claim, *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003), "[a] lack of probable cause generally creates an inference of malice."  *Boyd v. City of New York,* 336 F.3d 72, 78 (2d Cir. 2003)(citing *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 131 (2d Cir. 1997)).

In the context of a malicious prosecution claim, probable cause to prosecute consists of "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty."  *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (citing *Colon v. City of New York*, 60 N.Y.2d 78, 82 (1983)).  Probable cause is evaluated "in light of the facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest."  *Drummond v. Castro*, 522 F. Supp. 2d 667, 677-78 (S.D.N.Y. 2007) (internal citations and quotation marks omitted).  The Second Circuit has warned against "conflat[ing] probable cause to arrest with probable cause to believe that [plaintiff] could be successfully prosecuted.  Only the latter kind of probable cause is at issue with respect to the malicious prosecution claim."[4]  *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 417 (2d Cir. 1999).

---

[4] "There does not appear to be any conflict between formulations of the element of probable cause as . . . 'probability of guilt' and as . . . 'probability of success.'"  *Boyd*, 336 F.3d at 76 n.7.

Here, plaintiff has alleged, and the City does not dispute, that a prosecution was initiated against plaintiff, and that the subsequent proceeding terminated in plaintiff's favor. The City contends, however, that plaintiff's malicious prosecution claim must fail because defendants had probable cause to prosecute plaintiff. (Def. Mem. at 4.) The City argues that the defendants had probable cause to initially detain and arrest plaintiff when he was implicated by Mr. Martinez as one of the shooters and that because no subsequent facts came to light that negated this probable cause for arrest, plaintiff's malicious prosecution claim is barred. (*Id.* at 6-8.)

The court finds the City's argument unavailing. The Complaint sufficiently alleges that Detectives Bey and Lundy[5] lacked probable cause to initiate the prosecution against plaintiff. The Complaint alleges that plaintiff was charged with assault and weapons possession on the evening of October 23, 2008, after detectives Bey and Lundy coerced plaintiff to give a false confession. Allegedly detectives Bey and Lundy subsequently provided the coerced and falsified confession to

---

[5] In addition to detectives Bey and Lundy, the Complaint also brings the malicious prosecution claim against Captain John Doe and Police Officers John Does. (Compl. ¶ 53.) The Complaint alleges that Detectives Bey and Lundy reported the coerced and falsified confession to the Assistant District Attorney, thus initiating the prosecution. (*Id.* ¶¶ 41-42.) The court finds that the Complaint has not alleged any facts suggesting that Captain John Doe and Police Officers John Does were in any way involved in the initiation of the prosecution, and consequently, the plaintiff's malicious prosecution claim must be dismissed against them.

prosecutors in support of the initiation of plaintiff's prosecution.  The City's argument that Mr. Martinez's accusation was sufficient to establish probable cause for plaintiff's arrest, and thus, his prosecution, improperly conflates probable cause to arrest with probable cause to believe that plaintiff could be successfully prosecuted.

In *Boyd v. City of New York*, the Second Circuit affirmed the district court's decision to dismiss plaintiff's false arrest claim, because "[t]he police had sufficient information to warrant a reasonable belief that [the plaintiff] knowingly possessed stolen property."  336 F.3d at 76.  Prior to the arrest, the police had the stolen vehicle itself, witness testimony that the plaintiff owned the vehicle, plaintiff's admission that he owned a vehicle with the same make and color of the stolen vehicle, and plaintiff's presentation of the insurance card from the stolen vehicle with another owner's name on it.  *Id*.  The Second Circuit, however, concluded that the malicious prosecution claim was improperly dismissed, because there was a genuine issue of material fact as to whether plaintiff's incriminating statement that he purchased the vehicle from an unknown individual at the airport for $75 was made unconstitutionally (after plaintiff's arrest but before he was given *Miranda* warnings).  *Id*. at 77.  "[I]f the statement

was made after [plaintiff's] . . . arrest, there would be no probable cause to believe the prosecution could succeed." *Id*.

Plaintiff does not allege a claim of false arrest here. Consequently, the court need not decide whether Mr. Martinez's self-serving statement that identified plaintiff as the individual who shot the young girl was sufficient to establish probable cause for plaintiff's arrest. Plaintiff's malicious prosecution claim, however, mirrors the facts set forth in *Boyd*. As in *Boyd*, if Detectives Bey and Lundy coerced and falsified plaintiff's confession, which the court must assume is true for purposes of deciding a 12(b)(6) motion to dismiss, plaintiff's confession would clearly not have been admissible in plaintiff's criminal prosecution. The court finds that plaintiff has adequately alleged that there would be insufficient probable cause to believe the prosecution could succeed based solely on the self-serving and uncorroborated statement by Mr. Martinez when the police acted with actual malice to coerce and falsify plaintiff's confession. *See, e.g.*, *Gannon v. City of New York*, 917 F. Supp. 2d 241, 244-45 (S.D.N.Y. 2013) (denying motion to dismiss malicious prosecution claim because plaintiff alleged sufficient facts that the

initiation of his prosecution was premised on police officers'

unconstitutional search).[6]

The City contends that plaintiff has failed to rebut

the presumption of probable cause that results from an

indictment by the grand jury. (Def. Mem. at 8-9.) An

indictment by a grand jury creates a presumption of probable

cause, which may "only be rebutted by evidence that the

indictment was procured by 'fraud, perjury, the suppression of

evidence or other police conduct undertaken in bad faith.' "

*Savino v. City of New York,* 331 F.3d 63, 69 (2d Cir.

2003)(emphasis omitted)(quoting *Colon v. City of New York,* 455

N.E.2d 1248, 1251 (N.Y. 1983)). "[I]t is the plaintiff who

---

[6] Whether the existence of probable cause independent of the allegedly falsified evidence can be a defense to a malicious prosecution claim is the source of some confusion among district courts in this Circuit. *Compare Richardson v. City of New York,* No. 02 CV 3651, 2006 WL 2792768, at *6-*7 (E.D.N.Y. Sept. 27, 2006) (reading the Second Circuit's decisions in *Ricciuti* and *Jock* to stand for the proposition that "if it can be proved that a law-enforcement officer fabricated material evidence against a suspect and forwarded it to prosecutors, causing the suspect to be deprived of his liberty, then not only is the presumption of probable cause overcome, but the existence of probable cause based on non-fabricated evidence ceases to be a defense for the fabricator")(internal citation and parenthetical omitted) *with Morse v. Spitzer,* No. 07-CV-4793, 2012 WL 3202963, at *5 (E.D.N.Y. Aug. 3, 2012)("[W]hen a Fourth Amendment claim for malicious prosecution is alleged based on the same facts [as the claim for a fair trial], the ultimate result will be that the existence of probable cause independent of the allegedly falsified evidence is a defense to that claim but not to the fair trial claim."). The court need not resolve this question at this time, because accepting all plaintiff's allegations as true, the court finds that the City has failed to demonstrate that probable cause existed independently of the falsified evidence to prosecute plaintiff.

bears the burden of proof in rebutting the presumption of probable cause that arises from the indictment." *Id.* at 73.

Plaintiff has sufficiently alleged that his indictment was procured by police conduct undertaken in bad faith; specifically, the coercion and falsification of plaintiff's confession. Plaintiff alleges that Detectives Bey and Lundy lied about the circumstances under which plaintiff confessed to prosecutors and to the grand jury. Assumed to be true, as the court must at the motion to dismiss stage, the facts alleged by plaintiff sufficiently rebut the presumption of probable cause to prosecute.[7] *See, e.g.*, *Gannon*, 917 F. Supp. 2d at 244-45 (denying motion to dismiss malicious prosecution claim because plaintiff alleged sufficient facts to create inference that officer lied about the circumstances of a search to secure indictment); *see also Brandon v. City of New York*, 705 F. Supp. 2d 261, 273-74 (S.D.N.Y. 2010) (denying summary judgment with

---

[7] In concluding that plaintiff has alleged sufficient facts to rebut the presumption of probable cause created by the grand jury indictment in plaintiff's criminal case, the court recognizes that law enforcement officials enjoy absolute immunity from civil liability based on testimony given before the grand jury. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1510 (2012). In *Coggins v. Buonora*, 776 F.3d 108, 113 (2d Cir. 2015), however, the Second Circuit affirmed the district court's denial of absolute immunity to a police officer who had allegedly committed perjury before the grand jury, finding that the plaintiff's section 1983 claims were based on alleged misconduct (the withholding and falsification of evidence) that was independently actionable "prior to and independent of [the police officer's] perjurous grand jury appearance." *See also* Rehberg, 132 S.Ct. at 1507 n.1. Accordingly, because the Complaint alleges misconduct by Detectives Bey and Lundy, including the fabrication of evidence and withholding of material exculpatory evidence from prosecutors, separate from the detectives' alleged perjury before the grand jury and during other trial proceedings, the court declines to dismiss plaintiff's malicious prosecution claim on absolute immunity grounds at this juncture.

respect to malicious prosecution claim because jury could reasonably find that indictment was secured through bad faith or perjury).

## II.  Right to a Fair Trial

While the malicious prosecution claim under § 1983 protects an individual's liberty under the Fourth Amendment, *see Albright v. Oliver*, 510 U.S. 266, 274-75 (1994), the claim of denial of the right to a fair trial finds its roots in the Sixth Amendment, as well as the due process clauses of the Fifth and Fourteenth Amendments.  *See Holbrook v. Flynn*, 475 U.S. 560, 567 (1986); *Morse v. Fusto*, No. 13-4074, --- F.3d ---, 2015 WL 524862, at *6 n.7 (Sept. 11, 2015)(declining to address question of whether fabrication of evidence claims arise under the Sixth Amendment right to a fair and speedy trial or under the due process clauses of the Fifth And Fourteenth Amendments, because regardless the harm caused by such conduct is redressable through a § 1983 action for damages).

A person suffers a constitutional violation of his right to fair trial if "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012).  In cases where the complaint alleges that law

enforcement officials "fabricated evidence and forwarded it to prosecutors *in order to provide probable cause* for an arrest or prosecution," "the question of whether the defendant fabricated evidence becomes synonymous with the question of whether genuine probable cause existed, and accordingly a plaintiff's malicious prosecution and fair trial claims would rise or fall together." *Morse v. Spitzer*, No. 07-CV-4793, 2012 WL 3202963, at *6 (E.D.N.Y. Aug. 3, 2012).

Plaintiff alleges that Detectives Bey and Lundy coerced him to confess, and that plaintiff wrote down word-for-word the narrative dictated by the detectives. Thereafter, the detectives allegedly forwarded the information to prosecutors and plaintiff was remanded after his arraignment. The Complaint has sufficiently alleged a claim of violation for the plaintiff's right to a fair trial.[89] *See supra*, Part I. Malicious Prosecution.

---

[8] The City's argument that the statute of limitations has run on plaintiff's fair trial claim is meritless. The three-year § 1983 statute of limitations on plaintiff's fair trial claim does not accrue until the conclusion of the trial. *See Bailey v. City of New York*, 79 F. Supp. 3d 424, 455 (E.D.N.Y. 2015); *cf. Martin v. Merola*, 532 F.2d 191, 194 (2d Cir. 1976) ("Until the state prosecutions have been concluded, it is simply impossible to make any reasoned evaluation of plaintiffs' claim that they have been deprived of the opportunity to secure a fair trial by reason of the defendants' actions.")

[9] Plaintiff alleges, as a separate cause of action, that Detectives Bey and Lundy "knowingly and deliberately chose not to document or disclose to prosecutors information that was favorable and material to [plaintiff's] defense" in violation of his right to a fair trial. (Compl. ¶ 65.) The court declines to consider the allegations of police suppression of exculpatory evidence independently from the falsification of evidence, because they arise from interrelated, if not the same, set of facts. Indeed, standing alone, plaintiff's allegations of suppression of exculpatory evidence would fail as a matter of law, because the "majority view" among

## III. Right Against Self-Incrimination

Plaintiff alleges that the interrogation that yielded his false confession violated his Fifth Amendment right against self-incrimination.[10]  (Compl. ¶ 68.)  "[A] § 1983 action may exist under the Fifth Amendment self-incrimination clause if coercion was applied to obtain a waiver of the plaintiffs' rights against self-incrimination and/or to obtain inculpatory statements, and the statements thereby obtained were used against the plaintiffs in a criminal proceeding." *Deshawn E. by Charlotte E v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998)(citing *Weaver v. Brenner*, 40 F.3d 527, 535 (2d Cir. 1994)).

The Complaint alleges that Detectives Bey and Lundy induced plaintiff, who was sixteen years-old at the time, to confess by using the "good cop/bad cop" routine, whereby Detective Lundy played the role of the bad cop by yelling at plaintiff and threatening him with severe penalties, and

---

federal courts holds that a verdict acquitting a plaintiff of the criminal charges against him negates any violation of his rights pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and extinguishes any § 1983 claim.  *See Ambrose v. City of New York*, 623 F. Supp. 2d 454, 471-72 (S.D.N.Y. 2009)(collecting cases).

[10] Plaintiff brings the claim of violation of his Fifth Amendment right against self-incrimination against Detectives Bey and Lundy and Police Officers John Doe 1-5.  (Compl. ¶ 68.)  Plaintiff's sole factual allegation of Police Officer John Doe's involvement in his interrogation is that Police Officer John Doe #1 was present in the interrogation room after a pad and pen were thrown on the table in front of plaintiff.  (Compl. ¶ 36.)  Plaintiff does not allege that any Police Officer John Doe spoke to plaintiff, raised his voice, or otherwise intimidated the plaintiff in any way.  Consequently, the court dismisses plaintiff's Fifth Amendment claim against Police Officers John Doe 1-5.  *See Velasco v. United States*, No. CV-91-2743, 1992 WL 135029, at *7 (E.D.N.Y. May 28, 1992)("The mere presence, without more, of investigating officers at an interrogation simply cannot meaningfully be said to constitute coercion.")

Detective Bey implored plaintiff to write the false confession "for his own good."  The Complaint alleges that the detectives never notified plaintiff of his *Miranda* rights, nor gave him the opportunity to speak to a lawyer, and denied plaintiff's repeated requests to speak to his mother.  The Complaint further alleges that plaintiff broke down crying after several hours of interrogation before he wrote the confession.  Assuming that plaintiff's allegations are true as the court must at this stage, the Complaint adequately alleges a claim against Detectives Bey and Lundy for violating his Fifth Amendment right against self-incrimination.  *Cf. Weaver*, 40 F.3d 527 at 531 (affirming denial of summary judgment on plaintiff's Fifth Amendment claim where plaintiff presented genuine issues of material fact as to whether defendants engaged in coercive conduct by intimidating and threatening plaintiff, failing to give plaintiff *Miranda* warnings, and telling plaintiff that if he cooperated the investigators might be able to keep the story from the press).

## IV.  Right to Counsel

The Complaint also alleges that plaintiff's Sixth Amendment right to counsel was violated, because plaintiff was deprived of representation during his interrogation.  (Compl. ¶ 69.)  The Sixth Amendment right to counsel does not attach until "the time that adversary judicial proceedings have been

initiated." *Kirby v. Illinois,* 406 U.S. 682, 688 (1972).
Because the underlying charges against plaintiff were state law
charges, the court looks to state law to determine when the
adversarial judicial proceedings were initiated. *Deshawn E.,*
156 F.3d at 349. Generally, New York State courts hold that "a
criminal proceeding, and with it the right to counsel, is
initiated by the filing of an accusatory instrument." *Id.*
(citing *People v. Blake,* 320 N.E.2d 625 (N.Y. 1974)). Since
plaintiff had not been arrested or charged with any crime at the
time of his interrogation, his Sixth Amendment rights had yet to
attach. *See, e.g.*, *Wood v. Ercole*, 644 F.3d 83, 86 n.1 (2d Cir.
2011)(custodial interrogation of defendant did not violate Sixth
Amendment right to counsel because defendant's statement was
made before proceedings against him began). Consequently,
plaintiff's claim for violation of his Sixth Amendment right to
counsel is dismissed.[11]

---

[11] It is well-settled that the Fifth Amendment right against self-
incrimination entitles a suspect to request the presence of an attorney
during custodial interrogation even prior to the filing of an accusatory
instrument. *Wood*, 644 at 86 n.1 (citing *Miranda v. Arizona*, 384 U.S. 436,
458, 467 (1966). "To invoke the right to counsel, however, a suspect must
speak clearly enough 'that a reasonable police officer in the circumstances
would understand the statement to be a request for an attorney.'" *Id.* at 91
(quoting *Davis v. United States*, 512 U.S. 452, 458 (1994)). Plaintiff fails,
however, to allege that he made any request for an attorney. Consequently,
although plaintiff's Fifth Amendment claim against self-incrimination may
proceed for the reasons stated in the prior section, it may not proceed on
the ground that his Fifth Amendment right to counsel was violated.

## V.    Supervisory Liability

It is the well settled law of this Circuit that a claim brought under § 1983 must allege the personal involvement of each defendant. *See, e.g., Grullon v. City of New Haven,* 720 F.3d 133, 138 (2d Cir. 2013) (collecting Second Circuit cases). "Conclusory accusations regarding a defendant's personal involvement in the alleged violation, standing alone, are not sufficient . . . and supervisors cannot be held liable based solely on the alleged misconduct of their subordinates." *Kee v. Hasty,* No. 01 Civ. 2123, 2004 WL 807071, at *12 (S.D.N.Y. Apr. 14, 2004) (internal citations omitted).  Similarly, "conclusory, unsupported allegations [of gross negligence or the existence of a policy] are simply insufficient to establish liability" of supervisory officials under § 1983. *Mendoza v. McGinnis,* No. 9:05 Civ. 1124, 2008 WL 4239760, at *7 (N.D.N.Y. Sept. 11, 2008).  Allegations involving only a single incident are generally insufficient to demonstrate the existence of an official policy or custom for purposes of establishing personal involvement under § 1983. *Strano v. City of New York,* No. 97 Civ. 0387, 1998 WL 338097, at *5 (S.D.N.Y. June 24, 1998). "[A]llegations as to defendants' knowledge of alleged constitutional violations [are] insufficient to impose supervisory liability" under § 1983 unless accompanied by allegations that the defendants had direct responsibility for

monitoring the alleged violation or that there had been a
"history of previous episodes" putting the defendants on notice
of the problem.  *Candelaria v. Coughlin,* No. 91 Civ. 1117, 1991
WL 113711, at *2 (S.D.N.Y. June 11, 1991) (citations omitted).

      The Complaint does not allege any facts in support of
plaintiff's supervisory liability claim.  The Complaint's
allegation that Captains John Doe and Richard Roe were
personally involved in the deprivation of plaintiff's
constitutional rights by "creating and/or condoning the policy
or custom of failing to take preventative and remedial measures
to guard against such constitutional deprivations" is wholly
conclusory and unsupported.  (Compl. ¶ 72.)  The Complaint does
not identify a specific custom or policy established by the
supervisors, nor does it allege that the supervisor defendants
had direct responsibility for monitoring the violation, nor that
the supervisor defendants were aware of a history of previous
episodes.  Consequently, plaintiff's claims against the
supervisory defendants Captains Doe and Roe based on supervisory
liability are dismissed.

## VI.  Municipal Liability

      To state a claim for relief against a municipal
defendant pursuant to 42 U.S.C. § 1983, a plaintiff must allege
the existence of an officially adopted policy or custom that
caused injury and a direct causal connection between that policy

or custom and the deprivation of a constitutional right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown,* 520 U.S. 397, 403-404 (1997) (citing *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978)).

As an initial matter, plaintiff does not allege any facts from which the court can infer the existence of a city policy or custom, or that any such policy or custom caused the allegedly unlawful arrest or prosecution of plaintiffs. The conclusory assertions in the Complaint that the City of New York had a "policy, practice or custom of conducting constitutionally inadequate investigations; fabricating inculpatory evidence; perjury; failure to obtain probable cause to ensure that suspects would not be falsely arrested and maliciously prosecuted; suppressing from prosecutors material information favorable to criminal defendants; failing to follow the duties imposed by *Brady v. Maryland*; and using unconstitutional interrogation techniques," (Compl. ¶ 76; *see also* ¶¶ 77-81), do not suffice to state a claim under *Monell*. *See Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993) ("[t]he mere assertion, however, that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference"), *overruled on other grounds by Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163

(1993); *Bradley v. City of New York*, No. 08-CV-1106, 2009 WL
1703237, at *3 (E.D.N.Y. June 18, 2009).

Plaintiff's claims that the City of New York failed to
adequately supervise and train its employees in violation of
*Monell* also fail as matter of law. In order to successfully
plead a claim of *Monell* liability for failure to supervise under
Section 1983, a plaintiff must establish that "policymakers were
knowingly and deliberately indifferent to the possibility that
its police officers were wont to violate the constitutional
rights of arrestees." *Amnesty Am. v. Town of W. Hartford,* 361
F.3d 113, 127 (2d Cir. 2004) (internal quotation marks and
citation omitted). Thus, a plaintiff must show that "the need
for more or better supervision to protect against constitutional
violations was obvious" and that "no meaningful attempt" to curb
the unconstitutional conduct was made. *Id.* (internal quotation
marks and citation omitted).

A municipality is liable for a failure to train its
employees where: (1) the municipality "knows 'to a moral
certainty' that [its] employees will confront a given
situation"; (2) "the situation either presents the employee with
a difficult choice of the sort that training or supervision will
make less difficult or . . . there is a history of employees
mishandling the situation"; and (3) "the wrong choice by the
city employee will frequently cause the deprivation of a

citizen's constitutional rights." *Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir. 1992). The Second Circuit has made it clear that a plaintiff may not establish municipal liability under a failure-to-train theory without "identify[ing] a specific deficiency in the city's training program and establish[ing] that [the] deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am.,* 361 F.3d at 129-30 (quoting *City of Canton v. Harris,* 489 U.S. 378, 391 (1989)).

The Complaint makes boilerplate, conclusory allegations that the City failed to adequately supervise and train its police officers, detectives and investigators in conducting "constitutionally adequate investigations." (Compl. ¶ 78.) Plaintiff fails to plead a single fact indicating that the City was aware that its police officers were using coercive interrogation tactics and falsifying confessions. The Complaint also fails to point to any specific deficiency in the City's training program that is closely related to the ultimate injury alleged here. Consequently, plaintiff's *Monell* claims against the City are dismissed.

## CONCLUSION

For the foregoing reasons, the court (1) denies the City's motion to dismiss the following claims against Detectives Bey and Lundy: malicious prosecution, fabrication of evidence in

violation of plaintiff's right to a fair trial, and violation of plaintiff's right against self-incrimination; (2) dismisses all claims against Police Officers John Doe 1-5 for failure to state a claim under Rule 12(b)(6); (3) dismisses plaintiff's claims of failure to investigate and suppression of favorable evidence as duplicative of plaintiff's malicious prosecution and fabrication of evidence claims; (4) grants the City's motion to dismiss plaintiff's claim of violation of his Sixth Amendment right to counsel; (5) grants the City's motion to dismiss plaintiff's supervisory liability claims against Captain John Doe 1-3 and Richard Roe and *Monell* claims against the City of New York.

Plaintiff's counsel has failed to comply with the briefing schedule ordered by the court on September 11, 2014, despite the service of the City's motion on October 28, 2014. After plaintiff's counsel failed to oppose defendant's motion by the November 28, 2014 deadline, the court ordered on December 8, 2014 that plaintiff file his opposition by December 9, 2014 and warned plaintiff that defendant's motion to dismiss would be deemed unopposed if he failed again to comply with the court's order. Because plaintiff again failed to comply, the defendant's motion to dismiss was filed on December 10, 2014 without opposition. In light of plaintiff's counsel's failure to oppose this motion, the court orders Mr. O'Donnell to personally serve a copy of this Memorandum and Order on his

client and file a declaration of service by September 30, 2015.

At this time, the only defendant that has been served is the City of New York.  Plaintiff has failed to serve the remaining defendants within the 120 days of the filing of the complaint as required by Federal Rule of Civil Procedure 4(m). Despite plaintiff's failure to show good cause for extending the time for service, plaintiff is ordered to serve the remaining defendants within 14 days from the date of this Memorandum and Order.  In the event plaintiff fails to serve the remaining defendants, Detectives Bey and Lundy, the claims against them will be dismissed without prejudice pursuant to Rule 4(m). Moreover, should plaintiff fail to comply with the order of this court, plaintiff's claims may be dismissed for failure to prosecute his action and failure to comply with court orders pursuant to Federal Rule of Civil Procedure 41.

**SO ORDERED.**

Dated:     September 29, 2015
           Brooklyn, New York

_____/s/_____
Kiyo A. Matsumoto
United States District Judge